## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dawn Pitts, individually, and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br><br>            v.<br><br>TaxAct Inc.,<br><br>                           Defendant. | Civil Action No.: 1:23-cv-05516<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Dawn Pitts ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through undersigned counsel, hereby submits the following Class Action Complaint and Demand for Jury Trial against TaxAct Inc., (hereinafter, "TaxAct" or "Defendant") and alleges the following upon information and belief:

## <u>NATURE OF THE ACTION</u>

1.      This proposed class action against Defendant seeks damages for actual and imminent or impending injuries as a result of Defendant's unlawful disclosure of Plaintiff's and putative class members' private tax return information. The confidential, private tax return information that was unlawfully disclosed, disseminated, transmitted, and/or released by TaxAct to third parties without the consent of its customers included, but was not limited to, the following information: consumers' full names; email addresses; state, city, and zip code; phone numbers; gender; dates of birth; names of dependents; years of return; filing status; adjusted gross income; information regarding certain assets; investment information; charitable information; deductions; student loans; refund amounts; and which pages/buttons were utilized on TaxAct's website. This confidential tax return information ("TRI"), along with other personal identifiers, was unlawfully

disclosed, disseminated, transmitted, and/or released by TaxAct to unauthorized third-party advertising platforms.

2.      In or around 2022, TaxAct, along with other major tax preparation software companies, was the subject of an investigation by The Markup, which revealed that TaxAct had been unlawfully utilizing pixels to disclose, disseminate, transmit, and/or release confidential TRI to major tech companies, including Meta and Google.

3.      Subsequently, TaxAct, along with other major tax preparation software companies, was the subject of a congressional investigation regarding the unlawful disclosure, dissemination, transmission, and/or release of customer TRI data to major tech companies, including Meta and Google.

4.      TaxAct is, and at all relevant times was, one of the largest tax preparation companies in the United States.

5.      Founded in 1998, TaxAct is utilized by millions of taxpaying Americans to prepare and file their tax returns.

6.      TaxAct maintained and operated, and continues to maintain and operate a website, https://www.taxact.com. Through this website, taxpaying customers – among other things – can utilize TaxAct's tax preparation software to prepare and file federal and state taxes.

7.      In order to utilize TaxAct's tax preparation software, taxpaying customers are required to share sensitive, personal, and confidential TRI with TaxAct.

8.      These taxpaying customers have an expectation of privacy, including that TaxAct will maintain their TRI in a safe and secure manner.

9.      Online tax preparation software systems are the predominant way through which Americans file their taxes.

10.     Millions of Americans use TaxAct to file their taxes each year, entrusting TaxAct with personal, private TRI. Such TRI includes social security numbers and additional, detailed information required by the IRS and New York Tax Board for filing their taxes.

11.     Until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted, via TaxAct, to Meta Platforms, Inc. ("Meta") and Google, both of which were unauthorized third parties. The transmission was effectuated using Meta Pixel, a line of code inserted into the online tax preparation software, or Google Analytics. Such unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff or putative class members.

12.     TaxAct first implemented the Meta Pixel in or around February 2018.

13.     TaxAct used the Meta Pixel on its website. The Meta Pixel gathered customers' TRI and unlawfully disclosed, disseminated, transmitted, and/or released it to major tech companies, including Meta and Google.

14.     TaxAct also had Google Analytics installed on its website at least as early as March 2014.

15.     Upon information and belief, TaxAct unlawfully disclosed, disseminated, transmitted, and/or released confidential TRI to third party companies, including Google and Meta, from the time Google Analytics and Meta Pixel were installed on TaxAct's platforms through November 2022, when they were contacted by The Markup.

16.     Upon information and belief, TaxAct did not attempt to forestall or prevent the disclosure, dissemination, transmission, and/or release of customer TRI until after they were approached by The Markup in November 2022. Failure to take action before being contacted demonstrates a reckless disregard for customer TRI.

17.     Upon information and belief, TaxAct violated its own privacy policy and disclosure agreements by unlawfully transmitting customer TRI to unauthorized third parties, including, but not limited to Meta and Google, without notice to customers or obtaining customers' consent.

18.     Upon information and belief, TaxAct also permitted third parties that received customer TRI to utilize and profit from the unlawfully received information.

19.     TaxAct has disclosed, disseminated, transmitted, and/or released to and helped third parties obtain Plaintiff's and putative class members' TRI. Upon information and belief, TaxAct's unlawful actions or inactions have impacted hundreds of thousands, if not millions, of taxpaying customers in the United States and New York State.

20.     Plaintiff, individually, and on behalf of all others similarly situated, seeks to remedy these injuries, prevent their future occurrence, and, accordingly, asserts the below claims and seeks monetary damages, injunctive relief, declaratory relief, and all other available relief by law or in equity.

## THE PARTIES

### PARTY PLAINTIFF

21.     At all relevant times and currently, Plaintiff has been a United States citizen, residing and domiciled in Queens County, New York and thus is a citizen of the State of New York.

22.     Plaintiff is a customer of TaxAct and used TaxAct's website to prepare and file her federal and state income taxes for the tax years of 2015 and 2021.

### PARTY DEFENDANT

23.     Defendant TaxAct Inc. is an Iowa corporation with its principal place of business located at 3390 Asbury Road in Dubuque, Iowa 52002.

24.     TaxAct advertises and provides online tax preparation services to persons throughout the United States, including the State of New York.

25.     Upon information and belief, TaxAct owns and controls the website https://www.taxact.com, where customers can utilize its tax preparation technology to prepare and file state and/or federal income tax returns.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for both the Nationwide Class and the New York Subclass (as defined below) exceeds $5,000,000.00 exclusive of interest and costs, there are more than one-hundred (100) members of each putative class, and minimal diversity exists because a significant portion of the putative class members are citizens of a state different from the citizenship of Defendant.

27.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

28.     This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this state. Defendant offers and markets its services to New York residents, including Plaintiff, and permit customers to prepare and file New York state tax returns.

29.     Furthermore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events giving rise to this action occurred in this District; a substantial part of property that is subject of the action is situated in this District; and because Defendant transacts substantial business generally in this District.

## FACTUAL ALLEGATIONS

**A.      TaxAct is a Tax Return Preparer Under the Law.**

30.     Treasury Regulation, 26 C.F.R. § 301.7216-1 – Penalty for disclosure or use of TRI – broadly defines "[t]ax return preparer" [at (b)(2)] as "[a]ny person who is engaged in the business of preparing or assisting in preparing tax returns," including "[a]ny person who is engaged  in the business of providing auxiliary services in connection with the preparation of tax returns, *including a person who develops software that is used to prepare or file a tax return* and any Authorized IRS e-file Provider…" Accordingly, TaxAct is a "tax return preparer" under this regulation.

31.     At all relevant times, TaxAct provided tax preparation services as a tax return preparer under the law.

32.     At all relevant times, TaxAct maintained and operated online tax preparation software through https://www.taxact.com and mobile platforms for the purpose of electronic tax filing. Plaintiff and other putative class members utilized TaxAct's online tax preparation software to prepare and file federal and state income tax returns.

33.     At all relevant times, in order to utilize TaxAct's online tax preparation services, individuals were required to first sign up for an account on TaxAct's website. To create an account, users must check a box that confirms their agreement to TaxAct's Terms of Service & Terms of Use, as well as TaxAct's Privacy Statement.

34.    In short, in order to utilize TaxAct's tax preparation software for the purpose of preparing and filing federal and state income tax returns, taxpaying customers were forced to disclose confidential TRI to TaxAct – confidential TRI over which customers had an expectation of privacy.

35.    TaxAct was also subject to substantially similar New York State laws, including Section 32(14) of the New York Consolidated Laws. *See* Count II, *infra*. TaxAct is a tax return preparer under New York State law.

**B.    TaxAct Was Subject to And Violated Federal and State Statutes.**

36.    Pursuant to 26 C.F.R. § 301.7216-1(b)(3) term "tax return information" means "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." This includes information that "the taxpayer would not have furnished … to the tax return preparer but for the intention to engage … the tax return preparer to prepare the tax return." 26 C.F.R. § 301.7216-1(b)(3)(D). As such, any information a taxpayer provides to a tax preparation company like TaxAct is considered TRI.

37.    "Use" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(4), to include "any circumstance in which a tax return prepare refers to, or relies upon, TRI as the basis to take or permit an action."

38.    "Disclosure" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(5), as "the act of making TRI known to any person in any manner whatever."

39.    Given the broad definitions set forth in 26 C.F.R. § 301.7216-1 *et seq*. – intended to provide the taxpayer maximum protection – TaxAct's disclosure, dissemination, transmission, and/or release of customers' TRI to major tech corporations constitutes a disclosure under the

regulations. Likewise, the use of such information by Meta and Google – among possible others – constitutes a use of TRI.

40.    TaxAct was also subject to substantially similar New York State laws, including 20 CRR-NY 2600-5.1(L) of the New York Consolidated Laws. *See* Count II, *infra*. TaxAct violated same.

**C.    TaxAct Violated its Own Privacy Policy and Secretly Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's and Putative Class Members' Confidential TRI to Third Parties Without Obtaining Taxpayer Consent.**

41.    TaxAct did not obtain valid consent for its disclosure of confidential customer TRI data to Meta and Google. To utilize TaxAct's online services, a customer must agree to its License Agreement, Privacy Policy, and Terms of Service.

42.    According to the congressional investigation, TaxAct's sign-up procedure does meet IRS regulations. At no point did the website prompt the user to sign or date a consent form for the disclosure of TRI. TaxAct's 2022 version of its Privacy Statement broadly describes the purpose of the data sharing and named Google as a recipient; it did not mention Meta at all and did not describe each particular use authorized nor specify the precise TRI that was to be disclosed to those recipients. Nor did its statement mention that TRI would be broadly shared with Google. The Markup report reached similar findings. The Markup noted that no disclosures were found that specifically mentioned Meta or Facebook. The current version of TaxAct's Privacy Statement mentions both Meta and Google. At the time when TRI was found to have been disclosed in November of 2022, no such mentions were made.

43.    TaxAct's Privacy Policy states that it uses third-party tools to obtain information on how visitors interact with TaxAct's services.

44.     At all relevant times, TaxAct's privacy policy did not indicate to customers that their data, particularly confidential TRI, would be disclosed, disseminated, transmitted, and/or released to unauthorized third parties.

45.     At all relevant times, TaxAct's policy included language about ensuring consumers that TaxAct's goal in collecting information was to provide and improve TaxAct's websites, Services, features, and content, to administer use of TaxAct's site, and to enable customers to enjoy and easily navigate TaxAct's websites and services. Such a representation does not adequately or appropriately express the scope of TaxAct's use of customers' TRI. In fact, such a representation is likely to lead consumers to believe that the information collected in using TaxAct's site is used for specifically for carrying out TaxAct's online tax return preparation services and for improving user experience, and not for purposes such as development of a comprehensive dossier by unauthorized third parties to power their targeted online advertising algorithms.

46.     TaxAct's Privacy Policy assured consumers that TaxAct respects consumers privacy and the confidentiality of consumers personal information and informed consumers about the measures TaxAct takes in order to keep that information safe. Other representations by TaxAct's Privacy Policy downplay the true scope of TaxAct's data collection and sharing practices. When discussing information that was automatically collected through use of TaxAct's website, TaxAct lists relatively benign information. This representation obscures the full scope of TaxAct's employment of automatic data collection and sharing. This omits and conceals the fact that TaxAct would employ pixel technology to automatically collect and send customers' confidential TRI to unauthorized third parties.

47.     TaxAct did not obtain specific consent from customers to share their TRI with major tech companies like Meta and Google and, upon information and belief, neither Plaintiff nor putative class members consented to same.

48.     Though the congressional investigation indicated that TaxAct's newly updated privacy policy is more extensive, it still concluded – and Plaintiff and putative class members here allege – that TaxAct's Privacy Policy fails to meet IRS regulatory requirements.

49.     TaxAct's policy did not, at all relevant times, adequately describe the specified uses of customers' TRI that were authorized, nor did it specify what TRI was gathered and disclosed.

50.     At all relevant times, TaxAct's consent agreements did not adequately describe the particular use authorized, and the mandatory disclosure language prescribed by the IRS was not included. As such, TaxAct's forced agreements failed to meet IRS regulatory requirements and, at all relevant times, TaxAct failed to obtain taxpayers' valid consent prior to disclosing TRI to Meta and Google.

51.     Taxpaying customers could not possibly know or expect that such disclosures of their highly confidential and personal TRI might occur.

52.     TaxAct was not authorized to disclose TRI without consent from its customers. Treasury regulation 26 C.F.R. § 301.7216-2 – Permissible disclosures or uses without consent of the taxpayer – describes specific instances when a tax return preparer, such as TaxAct, is permitted to disclose TRI absent taxpayer consent.

53.     Pursuant to 26 C.F.R. § 301.7216-2(d), a tax return preparer may share TRI to another tax return preparer or an auxiliary service provider. Neither Meta nor Google qualify as tax return preparers. Likewise, neither Meta nor Google qualify as an auxiliary service provider.

As such, TaxAct was not permitted to disclose, disseminate, transmit, and/or release customers' TRI to third party companies, including Meta and Google, without consent.

54.     The TRI TaxAct disclosed, disseminated, transmitted, and/or released to third parties, including Meta and Google, was not truly anonymous, as these companies had the ability to – at minimum – indirectly associate the information with a particular taxpayer.

55.     TaxAct also admitted during the congressional investigation that amounts of adjusted gross income (AGI) and refunds were disclosed, disseminated, transmitted, and/or released to Meta and Google. Such disclosure, dissemination, transmission, and/or release is unlawful without specific taxpayer consent, which TaxAct did not obtain.

**D.      TaxAct Unlawfully Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's and Putative Class Members' Confidential TRI to Third Parties, Including Meta and Google, Using Pixels.**

56.     TaxAct implemented the Meta Pixel on its website around 2018.

57.     TaxAct implemented Google Analytics on its website around 2014.

58.     Upon information and belief, TaxAct has employed and continues to employ additional types of pixels on their website that operate in a similar fashion to the Meta Pixel and Google Analytics. According to the congressional investigation, TaxAct refused to provide information on which other pixels were or have been in use on the company's website.

59.     Through the use of pixels, TaxAct disclosed, disseminated, transmitted, and/or released confidential TRI to unauthorized third parties, including Meta and Google.

60.     This information included consumers' full names, email addresses, state, city, and zip code, phone numbers, gender, names of dependents, date of birth, year of the return, filing status, adjusted gross income, certain assets, investment income, charitable contributions,

mortgage information, deductions, student loan information, refund information, as well as what buttons and forms were utilized on TaxAct's website.

61.     TaxAct also indicated that it shared all the same information for its IRS Free File users because TaxAct does not differentiate between paid and Free File services for purposes of website analytics.

62.     At all relevant times and until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted to Meta and Google, both of which were unauthorized third parties. The transmission was effectuated using pixels, including Meta Pixel and/or Google Analytics. Such unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff or putative class members.

63.     Upon information and belief and pursuant to the congressional investigation, TaxAct seemed to know exactly the full functionality of the Meta Pixel and chose to implement it regardless. TaxAct was adamant of their commitment to maintaining the trust of taxpayers. In doing so, TaxAct pointed to the fact that after The Markup report, they took actions beyond what is required by current laws and regulations by limiting GA data collection and removing the Meta Pixel entirely.

64.     Pixels are a computer code that enables the user to send personal information to the company, e.g., Meta or Google. In this case, the personal information included taxpaying customers' TRI.

65.     Meta Pixel and Google Analytics are a line or lines of code that were inserted into the online tax preparation software. Upon information and belief, these pixels were utilized by TaxAct.

66.    Meta and Google pixels, once placed on a website, download additional code from Meta and Google, which enables the disclosure, dissemination, transmission, and/or release of information – in this case, taxpaying customers' TRI. It allows companies like Meta and Google to understand user behavior and tailor advertising efforts.

67.    Companies, like Meta and Google, use this data to, among other things, target ads and train their own artificial intelligence algorithms.

68.    The Meta Pixel came out in 2015.

69.    The Meta Pixel is given to companies to install, along with instructions. Meta Pixel utilizes cookies - specifically c_user cookies – which are unique to each user and allow for identification of users' platforms. Once Meta Pixel is installed on a website, collection of user information and disclosure, dissemination, transmission, and/or release of that information to Meta begins.

70.    Meta Pixel enables Meta to receive real-time logs of users' actions on third-party websites, like TaxAct. The information collected can be, and is, attributed to individual users.

71.    Meta provides marketing partners with insight into user activity, allowing them the ability to track visitor actions, define audiences, and create "lookalike" audiences to tailor advertisements.

72.    Google's pixel, part of its Google Analytics product, is similar to the Meta Pixel. It is a code that the customer, like TaxAct, installs on its website. Customers can allow Google to use data for Google's own purposes.

73.    Meta and Google utilize information obtained through its pixels – such as the TRI obtained from TaxAct – for their own purposes.

74.    The information obtained is provided to advertising partners, enabling them to target specific advertisements to certain customers.

75.    Tech companies, like Meta and Google, also utilize this information for its own purposes, optimizing its algorithms.

76.    Tech companies, like Meta and Google, utilize c_user cookies to expand user dossiers.

77.    Upon information and belief, TaxAct profited from its unlawful and improper sharing of Plaintiff's and other taxpayer's TRI with companies like Meta and Google.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, CONCEALMENT, AND ESTOPPEL

78.    Each unauthorized transmission of Plaintiff's and Class Members' Confidential TRI by Defendant constitutes a separate act that triggers anew the relevant statute of limitations.

79.    Additionally, any applicable statutes of limitation have been tolled by (1) the delayed discovery doctrine, as Plaintiff and Class Members did not and could not — through no fault or lack of diligence — reasonably have discovered Defendant's conduct alleged herein until shortly before the filing of this Complaint; and (2) the fraudulent concealment doctrine due to Defendant's knowing, purposeful, and active concealment and denial of all facts alleged herein including but not limited to the incorporation of the tracking pixels and devices and the impermissible sharing of taxpayer TRI.

80.    Defendant had exclusive knowledge that its website(s) incorporated the Meta Pixel, Google's pixels, and other tracking tools and failed to disclose to website users, including Plaintiff and Class Members, that by using Defendant's website(s) their Confidential TRI would be disclosed to, released to, or intercepted by Meta and Google.

81.    Under the circumstances, Defendant had a duty to disclose the nature, significance, and consequences of its collection and treatment of visitor's and customer's Confidential TRI. In fact, to the present Defendant has not conceded, acknowledged, or otherwise indicated to its customers and other website visitors that they have disclosed or released their confidential TRI to unauthorized third parties. Accordingly, Defendant is estopped from relying upon any statute of limitations.

## CLASS ACTION ALLEGATIONS

82.    Pursuant to Fed. R. Civ. P. 23, Plaintiff and the members of the proposed classes seek certification of the following Nationwide Class and New York State Subclass of similarly situated persons:

### NATIONWIDE CLASS

**All natural persons residing in the United States ("Nationwide Class") who used TaxAct's tax preparation software to prepare and/or file a tax return since TaxAct began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.**

### NEW YORK SUBCLASS

**All natural persons residing in the State of New York ("New York Subclass") who used TaxAct's tax preparation software to prepare and/or file a tax return since TaxAct began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.**

83.    Plaintiff reserves the right to modify or amend the proposed Nationwide Class and New York Subclass (together, "Class Members") definitions, including, but not limited to, adding additional subclasses as necessary.

84.    Excluded from proposed classes are Defendant, any entity or entities in which Defendant has a controlling interest, Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns.

85.    Also excluded from the Nationwide Class and New York Subclass are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

86.    All members of the proposed classes are readily ascertainable in that TaxAct has access to identificatory or contact information of those individuals affected and who would be included in any class or subclass definitions, which can be used to provide notice to potential class members.

87.    The proposed classes are so numerous that joinder of all members is impracticable. The exact number and identification of proposed class members are presently unknown to Plaintiff, but upon information and belief, the proposed classes include, at least, tens of thousands – and potentially over millions – of individuals given the size and scope of TaxAct's market share as it pertains to tax preparation software.

88.    Plaintiff's claims are typical of the Nationwide Class and New York Subclass, having used TaxAct's tax preparation software to prepare and file tax returns during the relevant time period — since TaxAct began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.

89.    Common questions of fact and law exist as to all members of the proposed classes, which predominate over any questions affecting only individual members to the proposed classes, including:

      a.    Whether TaxAct's acts or omissions harmed Plaintiff and putative class members;

b.  Whether TaxAct failed to implement and maintain adequate and reasonable security measures to protect the TRI of Plaintiff and the members of the proposed classes;

c.  Whether TaxAct's acts or omissions violated customers' privacy rights;

d.  Whether TaxAct owed a duty to Plaintiff and the members of the proposed class and subclass to adequately protect their TRI;

e.  Whether TaxAct breached its duty to protect the TRI of Plaintiff and the members of the proposed class and subclass by failing to provide adequate and reasonable security;

f.  Whether TaxAct wrongfully or unlawfully failed to provide adequate and reasonable security measures;

g.  Whether Plaintiff and the members of the proposed class and subclass suffered statutory or actual injuries, including ascertainable losses, as a result of TaxAct's acts or omissions;

h.  Whether Plaintiff and the members of the proposed class and subclass suffered injuries, including statutory, imminent or impeding harm, or enhanced risk of injury, as a result of TaxAct's acts or omissions;

i.  Whether TaxAct violated New York Consolidated Laws, Tax Law – Tax §§ 32 and 20 CRR-NY 2600-5.1;

j.  Whether TaxAct violated 26 U.S.C. §§ 7431 and 6103;

k.  Whether TaxAct violated The Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510;

l.  Whether TaxAct violated New York Penal Law § 250.00;

m.  Whether TaxAct violated New York Penal Law § 156.05;

n.  Whether TaxAct violated New York Penal Law § 155.05;

o.  Whether TaxAct violated New York General Business Laws § 349;

p.  Whether Plaintiff and the members of the proposed class and
    subclass are entitled to recover damages, punitive damages,
    attorney fees, costs, and interest; and

q.  Whether Plaintiff and the members of the proposed class and
    subclass are entitled to equitable relief, including restitution,
    injunctive relief, declaratory relief, or other equitable relief.

90.    Plaintiff is an adequate representative of the members of the proposed class and
subclass because her interests do not conflict with the interests of the members of the proposed
class and subclass she seeks to represent; she is represented by experienced and able counsel who
have litigated numerous other fraud, negligence, complex litigation, and mass tort actions, and
intend to prosecute this action vigorously for the benefit of the entire proposed class and subclass;
and she and her counsel will fairly and adequately protect the interest of the members of the
proposed class and subclass.

91.    Furthermore, a class action is superior to other available methods for the
adjudication of this litigation since individual litigation of the claims of Plaintiff and the members
of the proposed class and subclass is impracticable. It would be unduly burdensome to the courts
in which the many thousands of individual actions would proceed. Also, individual litigations
would present a potential for inconsistent or contradictory judgments, and inevitably increase the
delay and expense to all parties and the courts in resolving the legal and factual issues of these
cases.

92.    By contrast, the class action, as a device for the adjudication of the claims asserted
herein, presents far fewer managerial difficulties while providing the benefits of a single
adjudication, economies of scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**
**COUNT I**

18

## INVASION OF PRIVACY

### On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.

93.    Plaintiff, individually, and on behalf of the Nationwide Class and New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

94.    TaxAct's secret disclosure of Plaintiff's and Class Members' Confidential TRI, such as each respective user's personal contact information, filing status, refund amounts, and number of dependents – constitutes an intentional intrusion upon Plaintiff's and Class Members' private matters. These private matters were intended to remain private from third parties and Plaintiff and Class Members had an expectation of same.

95.    Plaintiff and Class Members had a reasonable expectation of privacy in their Confidential TRI. Plaintiff, Nationwide Class, and New York Subclass Members, did not authorize, consent to, or have any reason to know about TaxAct's intrusion into their privacy at the time the intrusion occurred.

96.    TaxAct's intrusion into Nationwide Class Members, and New York Subclass Members' private affairs, seclusion, and solitude, would be highly offensive to a reasonable person.

97.    Plaintiff, Nationwide Class, and New York Subclass Members expected that the confidential TRI they shared with a TaxAct, would not be disclosed to an unauthorized third party. Industry standards and social norms inform the understanding that private information, including personal information, financial information, and TRI, is highly protected. Disclosure of such information to third parties requires authorization and consent. The secret disclosure of confidential TRI would be highly offensive to a reasonable person.

98.    Plaintiff, Nationwide Class Members, and New York Subclass Members have suffered harm as a result of TaxAct's actions, including, but not limited to, an invasion of their privacy rights.

99.    Plaintiff, Nationwide Class Members, and New York Subclass Members seek appropriate relief for their injuries, including, but not limited to, monetary damages to compensate them for the harm of their privacy interests and disgorgement of profits made by TaxAct as a result of its intrusions into Plaintiff's, Nationwide Class Members', and New York Subclass Members' private matters.

100.    Plaintiff, Nationwide Class Members, and New York Subclass Members are entitled to punitive damages resulting from the malicious, willful, and intentional nature of TaxAct's actions. These actions were directed at invading Plaintiffs', Nationwide Class Members', and New York Subclass Members' privacy rights in conscious disregard of those rights. Such damages are deemed necessary to deter TaxAct from engaging in similar conduct in the future.

101.    If successful, this action will enforce an important right affecting the public interest and would confer a significant benefit on a large subclass of persons and/or general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the recovery of attorneys' fees and costs in prosecuting this action against TaxAct under applicable law.

102.    Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass request relief as further described below.

## **COUNT II**

**VIOLATION OF NEW YORK CONSOLIDATED LAWS, TAX LAW – TAX § 32 AND 20 CRR-NY 2600-5.1**

**On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.**

103.    Plaintiff, individually, and on behalf of the Nationwide Class New York Subclass, re-allege and incorporate by reference every allegation that is set forth in the preceding paragraphs as if fully set forth herein.

104.    20 CRR-NY 2600-5.1(L) provides that a tax return prepare may be sanctioned for:

> Willfully or recklessly disclosing or otherwise using a tax return or tax return information in a manner not authorized by Federal or State law or otherwise disclosing confidential information obtained in the course of a professional engagement unless such disclosure was with the consent of the client, in the course of dealing with tax authority, as required by law, or otherwise permitted under relevant professional standards.

105.    Section 32(14) of the New York Consolidated Laws, Tax Law provides:

> "Tax return preparer" means an individual who prepares a substantial portion of any return for compensation. Employees of a tax return preparer or a commercial tax return preparation business who prepare returns for clients of that preparer or preparation business, as applicable, and partners who prepare returns for clients of a partnership engaged in a commercial tax return preparation business, are all "tax return preparers" for purposes of this section. Excluded from the definition of "tax return preparer" are attorneys, public accountants, enrolled agents, and certified public accountants, and employees of an attorney, public accountant, enrolled agent, certified public accountant, or firm thereof preparing returns under the supervision of such attorneys, public accountants, certified public accountants and enrolled agents or firms thereof. Also excluded are volunteer tax preparers, employees of a business or partners in a partnership whose job responsibilities include preparation of only the business' or partnership's returns, and employees of a tax return preparer or a commercial tax return preparation business who provides only clerical or other comparable services.

106.    TaxAct is, and at all relevant times has been an "individual who prepares a substantial portion of any return for compensation" within the meaning of § 32(14) of the New York Tax Law.

107.   TaxAct, routinely disclosed information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns to, at minimum, Meta and Google without the consent of its clients, without being in the course of dealing with the tax authority, without that disclosure being required by federal or state law, and without being permitted under any other relevant laws or professional standards.

108.   Resulting from TaxAct's unlawful conduct alleged herein, Plaintiff has lost money and/or property. Plaintiff has also suffered injury in fact. Had Plaintiff known of TaxAct's unlawful conduct, she would not have paid money to TaxAct and used its website to prepare tax returns.

109.   As a direct proximate result of TaxAct's conduct, TaxAct has received and continues to hold unlawfully obtained property and money. TaxAct has also profited from its unlawful acts as alleged herein.

110.   Pursuant to 20 CRR-NY 2600-5.1(L), Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass, seek restitution and disgorgement of all earnings, profits, compensation, and benefit obtained by TaxAct as a result of the unlawful practices described herein in violation of 20 CRR-NY 2600-5.1(L).

111.   Plaintiff has taken on the responsibility of enforcing the laws and public policies specified herein by suing on their own behalf and on behalf of other similarly-situated class members. Plaintiff will incur a financial burden in pursing this action in furtherance of the public interest, and because of this an award of attorneys' fees to Plaintiff is appropriate pursuant to applicable law.

112.   Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass seek relief as further described below.

## COUNT III

## VIOLATION OF 26 U.S.C. § 7431 AND § 6103

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

113.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

114.    The general rule stated in 26 U.S.C. § 6103(a) provides that, "returns and return information shall be confidential…"

115.    In addition, 26 U.S.C. § 6103(b)(2) provides that, "the term return information means a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments…"

116.    In addition, 26 U.S.C. § 7431(a)(2) provides that,  "inspection or disclosure by a person who is not an employee of United States.--If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States…"

117.    TaxAct is considered "not an employee of the United States" under 26 U.S.C. § 7431(a)(2).

118.    TaxAct, either knowingly or by reason of negligence, disclosed return information about Plaintiff, Nationwide Class Members, and New York Subclass Members in violation of 26 U.S.C. § 7431(a)(2).

119.    Plaintiff seeks all relevant damages from TaxAct's violation of the statute described herein.

120.    Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York Subclass Members seek relief as further described below.

## COUNT IV

## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA), 18 U.S.C. § 2510

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

121.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth therein.

122.    The ECPA, 18 U.S.C. § 2510, makes it unlawful for a "person" to "intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

123.    Under 18 U.S.C. § 2510(8), "intercept" is defined as "including any information concerning the substance, purport, or meaning of that communication."

124.    Under 18 U.S.C. § 2510(6), "person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."

125.    Under 18 U.S.C. § 2510(12), "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

126.    Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications with TaxAct were electronic communications within the meaning of Under 18 U.S.C. § 2510(12). Plaintiff, Nationwide Class Members, and New York Subclass Members used TaxAct's website and TaxAct's tax preparation services to prepare tax returns and thereby communicated confidential personal and financial information with TaxAct.

127.    Meta, Google, and TaxAct are classified as persons within the meaning of the ECPA because they are corporations.

128.    Under 18 U.S.C. § 2510(4), the Meta Pixel tracker is a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

129.    Under 18 U.S.C. § 2510(4), Google's tracking pixels are each a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

130.    By incorporating the Meta Pixel and Google's tracking pixels into its website and permitting Meta and Google, and any other unauthorized third parties to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' confidential personal and financial information, TaxAct intercepted or endeavored to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications and/or produced Meta and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications, in violation of the ECPA.

131.    18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under 18 U.S.C. § 2510 for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such

interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.*" (emphasis added).

132.    Neither Plaintiff, Nationwide Class Members, or New York Subclass Members consented to TaxAct's interception of, or to TaxAct procuring Meta and Google, and other unauthorized third parties to intercept, their electronic communications with TaxAct through TaxAct's website.

133.    TaxAct does not meet the requirements of the "party exception" to the ECPA because the electronic communications intercepted by TaxAct, or which TaxAct procured Meta and Google, and other unauthorized third parties to intercept, were intercepted as part of TaxAct's practice of divulging confidential personal information and financial information to unauthorized third parties in violation of numerous federal and state laws.

134.    As detailed above, TaxAct violated 20 CRR-NY 2600-5.1(I), the Official Compilation of Codes, Rules and Regulations of the State of New York, New York Consolidated Laws - Tax Law, and committed a tortious invasion of privacy, when it disclosed Plaintiff's, Nationwide Class Members', and New York Subclass Members' confidential personal and financial information to Meta through the Meta Pixel.

135.    Moreover, as described below, TaxAct violated the New York Penal Law § 156.05. TaxAct's violations of the New York Penal Law § 156.05 is punishable by fines and/or imprisonment. Additionally, as described below, TaxAct committed larceny in violation of Penal Code section § 155.05.

136.    Based on information and belief, TaxAct violated numerous other federal and state statutes when it intercepted or endeavored to intercept Plaintiff's, Nationwide Class Members',

and New York Subclass Members' electronic communications and/or procured Meta and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications.

137.    Accordingly, TaxAct violated the ECPA each time the Meta Pixel or Google's tracking pixels incorporated into its website intercepted Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications.

138.    Pursuant to 18 U.S.C. § 2520, Plaintiff, Nationwide Class Members, and New York Subclass Members have been damaged by the interception and disclosure of their electronic communications in violation of the ECPA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff, the Nationwide Class and the New York Subclass and any profits made by TaxAct as a result of its violations, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

139.    Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass seek relief as further described below.

## COUNT V

## VIOLATION OF NEW YORK PENAL LAW § 250.00

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

140.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

141.    The New York Penal Law § 250.05 states, "a person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication. Eavesdropping is a class E felony."

142.    The New York Penal Law § 250.00 (5) electronic communication as, "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system, but does not include: (a) any telephonic or telegraphic communication; or (b) any communication made through a tone only paging device; or (c) any communication made through a tracking device consisting of an electronic or mechanical device which permits the tracking of the movement of a person or object; or (d) any communication that is disseminated by the sender through a method of transmission that is configured so that such communication is readily accessible to the general public."

143.    TaxAct is classified as a "person" within the meaning of The New York Penal Law § 250.05.

144.    Plaintiff's, Nationwide Class Members', and New York Subclass Members' communications of Confidential TRI with TaxAct on and through TaxAct's website were intended to be kept confidential to the parties. Plaintiff, Nationwide Class Members, and New York Subclass Members were using TaxAct's secure website. Plaintiff, Nationwide Class Members, and New York Subclass members understood TaxAct's website to be secure and no indication was given that their personal information and Confidential TRI would be shared with or viewed by any unauthorized third party. The circumstances reasonably indicate that Plaintiff, Nationwide Class Members, and New York Subclass Members desired their communications with TaxAct to be confined to the parties thereto.

145.    Despite not having any authorization from Plaintiff, Nationwide Class Members, or New York Subclass Members, TaxAct aided, agreed with, and/or conspired with Meta and Google to permit them to intercept these communications and to learn the content of those communications while in transit or in the process of being sent or received.

146.    TaxAct's conduct, as described above, violated the New York Penal Law § 250.00.

147.    Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York Subclass Members seek relief as further described below.

**COUNT VI**

**VIOLATION OF NEW YORK PENAL LAW § 156.05**

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

148.    Plaintiff, individually, and on behalf of the Nationwide Class, and New York Subclass incorporate the foregoing allegations as if fully set forth herein.

149.    New York Penal Law § 156.05 provides that, "a person is guilty of unauthorized use of a computer when he or she knowingly uses, causes to be used, or access a computer, computer service, or computer network without authorization. Unauthorized use of a computer is a class A misdemeanor." TaxAct violated New York Penal Law § 156.05 when it: (i) knew Meta and other third parties, without permission, were accessing Plaintiff's, Nationwide Class Members', and New York Subclass Members' computers, mobile phones, tablets, or other devices in order to wrongfully obtain and use their personal data, including their Confidential TRI, in violation of Plaintiff's, Nationwide Class Members', and New York Subclass Members' reasonable expectations of privacy in their devices and data, in violation of New York Penal Law § 156.05; (ii) helped Meta and other third parties in accessing, taking, copying, and using

Plaintiff's, Nationwide Class Members, and New York Subclass Members' personally identifiable information, including their Confidential TRI, in violation of New York Penal Law § 156.05.

150.    TaxAct violated New York Penal Law § 156.05 when it incorporated the Meta Pixel and other tracking devices into its website and when it configured the Meta Pixel and other third-party trackers to disclose Plaintiff's, Nationwide Class Members', and New York Subclass Members' Confidential TRI and other personal information to Meta and other third parties, thereby causing Meta and other third parties to access Plaintiff's, other Nationwide Class Members', and other New York Subclass Members' computers and devices without permission.

151.    Plaintiff, Nationwide Class Members, and New York Subclass Members suffered damage and loss as a result of TaxAct's conduct. TaxAct's practices have deprived Plaintiff, Nationwide Class Members, and New York Subclass Members of control over their valuable property, the ability to receive compensation for that data, and the ability to withhold their data for sale.

152.    Plaintiff, Nationwide Class Members, and New York Subclass Members seek compensatory damages in accordance with applicable law, in an amount to be proven at trial, and injunctive or other equitable relief.

153.    Plaintiff, Nationwide Class Members, and New York Subclass Members have also suffered irreparable and incalculable harm and injuries from TaxAct's violations. Plaintiff, Nationwide Class Members, and New York Subclass Members have no adequate remedy at law.

154.    Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass request further relief as described below.

## COUNT VII

## VIOLATION OF NEW YORK PENAL LAW § 155.05

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

155.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York subclass, incorporate the foregoing allegations as if fully set forth herein.

156.    New York Penal Law § 155.05(1) provides, "a person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."

157.    New York Penal Law § 155.05(2)(a) provides, "Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed by conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses."

158.    Under New York law, Plaintiff's, Nationwide Class Members', and New York Subclass Members' private data constitutes property that can be the subject of larceny.

159.    TaxAct acted in a manner that is constituted as larceny by taking Plaintiff's, Nationwide Class Members', and New York Subclass Members' Confidential TRI through Advertising Platform pixels and trackers on its website, with the intent to deprive Plaintiff, Nationwide Class Members, and New York Subclass Members of their property.

160.    Plaintiff, Nationwide Class Members, and New York Subclass Members did not consent to any of TaxAct's actions in taking Plaintiff's, Nationwide Class Members', and New York Subclass Members' private data.

161.    Pursuant to New York Penal Law § 155.05, Plaintiff's, Nationwide Class Members', and New York Subclass Members are entitled to damages, as well as attorneys' fees

and costs, for injuries sustained as a result of TaxAct's violations of New York Penal Law § 155.05.

162.    Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below.

## COUNT VIII

## VIOLATION OF NEW YORK GENERAL BUSINESS LAWS § 349

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

163.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

164.    The New York General Business Laws § 349(a) provides, "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

165.    TaxAct's omissions, practices, and non-disclosures as alleged herein constituted deceptive practices in the conduct of business within the meaning of the New York General Business Laws § 349.

166.    TaxAct engaged in unlawful and deceptive business acts or practices as set forth above. This includes violations of New York General Business Laws § 349, New York Penal Law § 155.05, New York Penal Law § 156.05, New York Penal Law § 250.00, The ECPA, 18 U.S.C § 2510, New York Consolidated Laws, Tax Law – TAX § 32, and 20 CRR-NY 2600-5.1.

167.    Plaintiff reserves the right to allege other violations of law that were committed by TaxAct that constitute unlawful and deceptive business acts or practices within the meaning of the New York General Business Laws.

168.    Had Plaintiff, Nationwide Class Members, and New York Subclass Members known that their Confidential TRI would be disclosed or released by TaxAct to unauthorized third parties, they would not have shared their personal and financial information with TaxAct's website or would not have used TaxAct's website. Had Plaintiff, Nationwide Class Members, and New York Subclass Members known that their Confidential TRI would be disclosed or released by TaxAct to unauthorized third parties, they would not have used TaxAct's website to complete tax returns.

169.    Plaintiff, Nationwide Class Members, and New York Subclass Members suffered injury in fact and lost money or property as a result of TaxAct's acts and practices in that a portion of any money Plaintiff, Nationwide Class Members', and New York Subclass Members paid for TaxAct's services went to fulfill TaxAct's obligations with respect to the confidentiality and security of Plaintiff's, Nationwide Class Members, and New York Subclass Members Confidential TRI, and TaxAct failed to fulfill those obligations. The loss of money and/or property includes the unauthorized collection of Plaintiff's, Nationwide Class Members', and New York Subclass Members' Private Data, which has value in an amount to be proven at trial. Moreover, Plaintiff, Nationwide Class Members, and New York Subclass Members have suffered harm in the form of diminution of the value of their Confidential TRI and other private data.

170.    The actions of TaxAct resulted in damage to and loss of Plaintiff's, Nationwide Class Members', and New York Subclass Members' property right to control the dissemination and use of their Private Data.

171.    TaxAct has taken property from Plaintiff's, Nationwide Class Members', and New York Subclass Members' without providing any, or just, compensation to Plaintiff's, Nationwide Class Members', and New York Subclass Members'.

172.    TaxAct should be required to cease its illegal and/or unfair collection of user data and be required to retrieve and delete all illegally and/or unfairly obtained user data. TaxAct reaped unjust profits and revenues in violation of the New York General Business Laws.

173.    Plaintiff, Nationwide Class Members, and New York Subclass Members also suffered injury in fact as a result of TaxAct's acts and practices since they paid more for TaxAct's services than they otherwise would have had they known TaxAct was disclosing their Confidential TRI to unauthorized third parties in violation of its legal obligations, social norms, and reasonable consumer expectations.

174.    Plaintiff, Nationwide Class Members, and New York Subclass Members have also suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of: (i) invasion of privacy; (ii) breach of the confidentiality of their Confidential TRI; and/or (iii) deprivation of the value of their Confidential TRI for which there is a well-established national and international market.

175.    Plaintiff also seek restitution on behalf of herself, the Nationwide Class Members, and the New York Subclass Members.

176.    Plaintiff, Nationwide Class Members, and the New York Subclass Members lack an adequate remedy at law because the ongoing harm from TaxAct's interception, collection, taking, possession, and use of Confidential TRI must be addressed by injunctive relief. Due to the ongoing and nature of the harm, the harm cannot be adequately addressed alone by monetary damages.

177.    This action if successful, will enforce an important right affecting the public interest and would confer a significant benefit on a large-scale subclass of persons and/or general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in

relation to Plaintiff's stake in the matter. Since this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the recovery of attorneys' fees and costs in prosecuting this action against TaxAct pursuant to applicable law.

178.    Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass seek relief as further described below.

**COUNT IX**

**NEGLIGENCE**

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

179.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

180.    Defendant owed a duty to Plaintiff and the members of the Nationwide Class and the New York Subclass to exercise reasonable care in gathering, possessing, storing, organizing, and maintaining their TRI and preventing it from being provided to unauthorized third parties, including Meta and Google.

181.    Defendant had a common law duty to prevent foreseeable harm to Plaintiff and the members of the Nationwide Class and the New York Subclass because they were the foreseeable and probable victims of Defendant's improper disclosure of their impermissible sharing of confidential tax payer TRI with unauthorized third parties, including Meta and Google.

182.    Defendant's duty also arose from their unique position as one of the largest tax preparation service providers in the United States that routinely engages in the collection of highly sensitive personal TRI. A service that requires the utmost trust of users given the nature of the data being provided.

183.    Defendant furthermore held itself out as trusted stewards and custodians of the TRI of its users, and thereby assumed a duty to reasonably protect their TRI.

184.    Defendant breached its duties owed to Plaintiff and the members of the Nationwide Class, and the New York Subclass by impermissibly sharing their TRI with unauthorized third parties without their knowledge or consent.

185.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the members of the Nationwide Class, and the New York Subclass their TRI data would not have been compromised.

186.    Plaintiff on behalf of herself, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below.

## COUNT X

## NEGLIGENCE *PER SE*

187.    Plaintiff, individually, and on behalf of the Nationwide Class and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

188.    Defendant violated numerous federal and New York state statutes through its impermissible disclosure of Plaintiff's and the members of the Nationwide Class and the New York Subclass' private TRI data without their consent, as described above.

189.    Defendant's violation of these statutes constitutes negligence *per se*.

190.    Plaintiff on behalf of herself, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below

WHEREFORE, Plaintiff and the members of the proposed Nationwide Class and New York Subclass demand judgment against Defendant, jointly and severally, for declaratory relief,

injunctive relief, damages and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the proposed classes, demands judgment against Defendant, jointly and severally, for damages to which she and all other similarly situated individuals are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, including:

a. That the Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class and subclass representative; and appoint Plaintiff's counsel as Class Counsel;

b. That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

c. That the Court award Plaintiff and the Nationwide Class and New York Subclass compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

d. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

e. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of their unlawful acts, omissions, and practices;

f. That Plaintiff and the Nationwide Class and New York Subclass be granted appropriate equitable or declaratory relief;

g. That the Court award to Plaintiff and the Nationwide Class and New York Subclass all costs and disbursements of this action, along with reasonable attorneys' fees, costs and expenses;

h. That the Court award pre- and post-judgment interest at the maximum legal rate; and

      i.  That the Court grant all such other relief as it deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2023                    Respectfully Submitted,

**PARKER WAICHMAN LLP**

*/s/ Raymond C. Silverman*
Raymond C. Silverman
Jerrold S. Parker
Melanie H. Muhlstock
6 Harbor Park Drive
Port Washington, NY 11050
Phone: (516) 466-6500
Fax: (516) 466-6665
<u>rsilverman@yourlawyer.com</u>
<u>jparker@yourlawyer.com</u>
<u>mmuhlstock@yourlawyer.com</u>